## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Aug 29 2017, 9:06 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Darren Bedwell
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Matthew B. Mackenzie
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Todd D. Keck, *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, *Appellee-Plaintiff.* | August 29, 2017 <br><br> Court of Appeals Case No. 66A03-1703-CR-628 <br><br> Appeal from the Pulaski Superior Court <br><br> The Honorable Patrick B. Blankenship, Judge <br><br> Trial Court Cause Nos. 66D01-1512-F6-121 66D01-1512-F5-048 66D01-1601-F5-2 |

**Pyle, Judge.**

# Statement of the Case

[1] Todd D. Keck ("Keck") appeals his sentences for his convictions of Class A misdemeanor domestic battery,[1] Class A misdemeanor invasion of privacy,[2] and Level 5 felony stalking,[3] to which he pled guilty pursuant to a plea agreement. He argues that his sentence was inappropriate under Indiana Appellate Rule 7(B) in light of the nature of his offense and his character. Because Keck has failed to show that his sentence is inappropriate, we affirm the trial court's decision.

[2] We affirm.

# Issue

Whether Keck's sentence was inappropriate under Indiana Appellate Rule 7(B).

# Facts

[3] On the night of December 18, 2015, forty-seven-year-old Keck became irate with his then-girlfriend, Amanda Krintz ("Krintz"), and began threatening and yelling at her. He "head-butted" Krintz twice, causing her to have redness and swelling. (Tr. 65). As Keck was verbally and physically abusing Krintz, she

---

[1] IND. CODE § 35-42-2-1.3(a).

[2] I.C. § 35-46-1-15.1(5). We note that this statute was amended effective July 1, 2017. We will apply the version of the statute in effect at the time of Keck's offense.

[3] I.C. § 35-45-10-5(a).

made a sixteen-minute audio recording of his threats. (Tr. 52). She then was able to flee from her house to call 9-1-1. (Tr. 52).

[4] Keck was arrested and charged with Level 6 felony intimidation and Class A misdemeanor domestic battery in Cause Number 66D01-1512-F6-00121 ("Cause 121"). The trial court then released Keck on bond. As a condition of his release, Keck was ordered not to contact Krintz "by telephone or letter, through an intermediary, or in any other way, directly or indirectly…." (App. Vol. 2 at 96).

[5] In spite of this no-contact order, Keck sent Krintz text messages containing sad face emoticons on December 22 and 24, 2015. Then, on December 27, 2015, Keck sent Krintz a long, five-message text message apologizing for his previous actions and telling her that he was sober. In one of the five text messages, Keck admitted "I know I'm not supposed to text[.]" (App. Vol. 2 at 193). As a result of these violations of the no-contact order, the State charged Keck with Level 5 felony stalking and three counts of Class A misdemeanor invasion of privacy in Cause Number 66D01-1512-F5-00048 ("Cause 48") on December 29, 2015.

[6] Thereafter, on January 5, 2016, Keck sent Krintz another text message. It stated:

> Just wanted to say hi just left an a.a. meeting  I feel a lot better
> but sure miss you Amanda you know I don't have to move back I
> sure wish you would give me the chance and see the [sic] I'm
> serious about living a better life hope all is well miss you.

(App. Vol. 2 at 183) (improper grammar and punctuation in original). As a result of this contact, the State charged Keck with an additional count each of Level 5 felony stalking and Class A misdemeanor invasion of privacy in Cause Number 66D01-1601-F5-00002 ("Cause 2").

[7] On December 13, 2016, Keck and the State tendered a proposed plea agreement to the trial court. The agreement provided that Keck would plead guilty to Class A misdemeanor domestic battery in Cause 121, Class A misdemeanor invasion of privacy in Cause 48, and Level 5 felony stalking in Cause 2, and serve an aggregate sentence of four (4) years with 790 days executed and 670 days suspended. The trial court rejected the proposed agreement.

[8] Subsequently, Keck pled guilty to Class A misdemeanor domestic battery in Cause 121, Class A misdemeanor invasion of privacy in Cause 48, and Level 5 felony stalking in Cause 2, and the State dismissed the remaining charges in all three causes.[4] The trial court held a sentencing hearing on February 28, 2017. At the hearing, Krintz testified to the impact of Keck's offenses. She said that she was still concerned for her safety and that the audio recording of Keck's December 18, 2015 threats she had given to the police had been "just a small preview of what [she] [had] go[ne] through every night at home with [Keck]." (Tr. 52). She said that he had "terrorized [her] in [her] own house on a regular basis." (Tr. 52). The State then introduced into evidence a copy of the audio

---

[4] It is not clear whether the State and Keck entered into a written plea agreement. There is no written plea agreement in the record.

recording Krintz had made and played the recording for the court. In the

recording, Ketz made the following threats to Krintz, among others:

> I will ram my fucking fist down your fucking throat, Man. Fuck
> you Man. Fuck you Man. Fuck you. I will snatch you up, and I
> will put you through a fucking wall.

* * * * *

> You are a bitch, Man. You are a bitch. Straight up bitch. Bitch.
> Fuck with me Man. Every night, like tonight, I try to be cool,
> come in [sic], you're a cunt, Man.

* * * * *

> I will come back fucking three months, eight months later, while
> you are all fucking sleeping comfortable in your bed, I will
> fucking burn your ass alive. I swear to fucking God I will, Man.
> I will fucking torture your ass. I promise. I promise.

* * * * *

> You're a bitch, Man. You are a straight up, fucking bitch. And
> you know what, you fucking came across the wrong
> motherfucker, because I am going to tell you what, you have me
> locked up, put a restraining order on me, as soon as it is up bitch,
> when you are sleeping, I am going to come, and I am going to
> fuck you up. Understand that.

* * * * *

> I will fucking destroy you, Man. I am telling you what, if I – it
> might be three years, six months, make sure you do what you do,
> because I am going to tell you what . . . . When I get out, I am
> going to fuck you up. Don't fuck with me, Man. I am telling
> you! You don't fucking believe me, Man! I am telling you what,
> straight up.

* * * * *

I am fucking telling you, don't fuck with me!  I will fuck you up!
I don't take shit from no man, and I ain't taking no shit from
you.  Understand what I am saying, Man, because I will crush
you, Man.  No, no, no, really[.]

* * * * *

I will crush you.

* * * * *

I will crush you.

* * * * *

Enjoy your little cunt ass.  Fucking take your little pizza king and
shove it up your fucking cunt.  I don't need your shit.  Don't
want your shit, don't want your shit, don't fucking—I am not
fucking—no, I don't need nothing you got for me, Man.  No,
fuck you.  Cross me, I swear to fucking God man.  What you
want to fucking do my shit, and fucking run a background check,
you better fucking check what you are fucking doing.  I am
telling you right now.  I am not threatening you, but if you want
me to be a fucking bitch, you want to run a background check on
me, you better fucking check on my fucking family.  You better
check on my fucking friends. . . .  They are not going to play
fucking . . . .  Be careful about what you are doing, Man, because
them motherfuckers ain't gonna play.  I am not fucking with you.
Don't fuck with me Man.  And I am going to tell you what right
now, don't fucking call the law on me, Man. . . .  I will burn your
fucking ass.  I promise you I will.  Another night, I want to come
home.  Fuck you, Man.  It is over Man.  I want [to] tip this table
right over on your fucking ass and smash your fucking face.

* * * * *

I am going to tell you right now, the best [sic], I will be out, and I
will fucking find you.  I promise you.  Look in my eyes.  Fucking

burn me, and I will fucking crush you.  I fucking swear to fucking God.  If you were a guy, I would fucking deck you right now.

*****

You ain't seen shit.  You know what, when I do get crossed end up with you, I will beat you like a guy.  I will beat the fucking shit out of you, Man.  I swear to fucking God.  You think I am a pussy?  I will fucking destroy your fucking punk ass.  I promise you.  I promise you.  I promise you. . . .  I am just telling you right now[.]  I can't be more fucking explicit to you.  I tell you what, put a fucking restraining order on me, three months, and I will be out.  I swear to fucking God.  You better fucking leave this fucking town, because I swear to fucking God you do this shit to me[.]

*****

I will fucking find your ass in three months, six months, eight months down the road, I will fucking burn your ass in the house.  I swear to fucking God.  And your dog.  Everybody.  I promise.  I fucking promise.  I will fucking see you in hell.  You are a bitch, Man.  Enjoy your night.

(Tr. 54-62).  At the end of the recording, Krintz told Keck "I will be back," and then the following exchange took place:

[KECK:]  I will be too, I have a gun loaded for your ass.  Keep that in mind, Man.

[KRINTZ:]  You have got a gun?

[KECK:]  You don't think so? . . . Huh?  No, really.

*****

[KECK:]  You are a fucking bitch, Man.  Whatever cops you need to come here, come here bitch.  I will fucking destroy you.

(Tr. 64).

[9] Also at the hearing, the State presented evidence that Keck had a substantial criminal history. The pre-sentence investigation report ("PSI") summarized his criminal history as follows:[5]

> [Keck's] adult history is massive. He was first arrested as an adult at the age of nineteen. He has a total of fifty-nine (59) arrests, including the instant offenses, since he was nineteen years old. He has had 22 convictions which [led] to four different probations of which one was successfully completed. He has been sentenced to jail thirteen times and was sentenced to prison five times. Of the fifty-nine charges the Defendant had six acquittals, fifteen charges that were dismissed by plea agreements.
>
> [Keck's] charges included twenty-two charges of Battery and Intimidation; twelve crimes involving drugs and alcohol; six charges involving Driving While Suspended; and ten charges of Theft, Conversion, and Check Deception.

(App. Vol. 3 at 12).

[10] At the conclusion of the hearing, the trial court sentenced Keck to six (6) years executed for his stalking conviction, three hundred and sixty-five (365) days executed for his invasion of privacy conviction, and one (1) year executed for his domestic battery conviction and ordered the sentences to run consecutively,

---

[5] Pursuant to Indiana Administrative Rule 9(G)(2)(b) and INDIANA CODE § 35-38-1-13, the PSI must be excluded from public access. However, in this case the information contained in the PSI is "essential to the resolution" of Keck's claim on appeal. Ind. Admin. Rule 9(G)(7)(a)(ii)(c). Accordingly, we have included confidential information in this decision only to the extent necessary to resolve the appeal.

resulting in an aggregate eight-year sentence.  The court noted that Keck had not demonstrated any remorse or empathy for what he had done to Krintz, other than remorse for himself and his family, and that his previous crimes had similarly demonstrated his lack of empathy for others.  It also found the following aggravating factors:  (1) the harm and injury suffered by the victim (that Krintz "had to sit there for sixteen minutes and listen to how somebody was going to kill her"); (2) Keck's extensive criminal history;  (3) Keck had violated a protective order twice since being charged with domestic battery in Cause 121; and (4) Keck had threatened to harm Krintz when he got out of jail. (Tr. 85).  Keck now appeals.

## Decision

[11]  On appeal, Keck argues that his aggregate eight-year sentence for his three convictions was inappropriate in light of the nature of his offense and his character.  In particular, he challenges his six-year maximum sentence for his stalking conviction and requests that we lower his stalking sentence to three years.

[12]  We may revise a sentence under Appellate Rule 7(B) if it is inappropriate in light of the nature of the offense and the character of the offender.  Ind. Appellate Rule 7(B).  The defendant has the burden of persuading us that his sentence is inappropriate.  *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind. 2006).  The principal role of a Rule 7(B) review "should be to attempt to leaven the outliers, and identify some guiding principles for trial courts and those charged with improvement of the sentencing statutes, but not to achieve a perceived

'correct' result in each case." *Cardwell v. State*, 895 N.E.2d 1219, 1225 (Ind. 2008). "Appellate Rule 7(B) analysis is not to determine whether another sentence is more appropriate but rather whether the sentence imposed is inappropriate." *Conley v. State*, 972 N.E.2d 864, 876 (Ind. 2012) (internal quotation marks and citation omitted), *reh'g denied*. Whether a sentence is inappropriate ultimately turns on "the culpability of the defendant, the severity of the crime, the damage done to others, and a myriad of other factors that come to light in a given case." *Cardwell*, 895 N.E.2d at 1224. We are supposed to focus on "the forest—the aggregate sentence—rather than the trees—consecutive or concurrent, number of counts, or length of the sentence on any individual count." *Id.* at 1225.

[13]     When determining whether a sentence is inappropriate, we acknowledge that the advisory sentence "is the starting point the Legislature has selected as an appropriate sentence for the crime committed." *Childress*, 848 N.E.2d at 1081. Here, Keck was convicted of a Level 5 felony and two Class A misdemeanors. A Level 5 felony has a sentencing range of one (1) to six (6) years and an advisory sentence of four (4) years. I.C. § 35-50-2-6(b). A person who commits a Class A misdemeanor must not be sentenced to a term longer than one (1) year. I.C. § 35-50-3-2. As Keck received a sentence of six (6) years for his Level 5 felony conviction and one (1) year for each of his Class A misdemeanor convictions, to be served consecutively, he received the maximum possible aggregate sentence of eight years.

[14] With regard to the nature of Keck's offenses, the record revealed that Keck heinously and extensively threatened Krintz, including threats that if she reported him, he would "fucking burn [her] ass in the house" and her dog, no matter how long it took him to get out of jail; that he would "torture [her] ass'" that he would "destroy [her];" and that he would "fucking crush [her]," among other threats. (Tr. 56, 57, 61, 62). While he was verbally abusing her, he head-butted her twice, causing injury. Then, after Keck was arrested and charged with domestic battery and intimidation, he repeatedly contacted Krintz in violation of his no-contact order. This contact continued even after he had been charged with several counts of invasion of privacy for violating the no-contact order through his first texts.

[15] Keck attempts to minimize the severity of these actions by arguing that his aggregate sentence, and his stalking sentence in particular, was inappropriate because the text messages he sent to Krintz "did not themselves contain threats or anything to provoke fear" and because "most stalking cases are [] based on conduct much worse than sending a text message." (Keck's Br. 12, 13). However, Keck's arguments relate solely to the nature of his stalking conviction. As we stated above, we are supposed to focus on "the forest—the aggregate sentence—rather than the trees—consecutive or concurrent, number of counts, or length of the sentence on any individual count." *Cardwell*, 895 N.E.2d at 1225. The nature of Keck's combined offenses more than adequately supports his aggregate eight-year sentence.

[16] Moreover, contrary to Keck's argument, his texts were enough to provoke Krintz's fear in light of his previous threats that he would find her and destroy her, regardless of legal repercussions. His act of contacting Krintz in spite of the no-contact order and the invasion of privacy charges reinforced this message that he would not be deterred by the law. Therefore, we are not persuaded that Keck's sentences were inappropriate in light of the nature of his offenses.

[17] Next, Keck argues that his sentence was inappropriate in light of positive evidence of his character, including that he has taken steps to deal with his substance abuse and to complete life skills programs since his offenses. We do not find this evidence persuasive considering the extensive evidence of Keck's poor character. Keck has an appalling criminal history and has spent his entire adult life engaged in criminal activities. As the trial court summarized, in the thirty years Keck has been an adult, he has been arrested fifty-nine times and convicted twenty-two times. Significantly, twenty-two of those charges were related to battery or intimidation, like his domestic battery conviction here. Of the four times Keck has been on probation, he has violated his probation three times. These convictions and failures to abide by the terms of his probation demonstrate, like the nature of his offenses, that Keck does not have any respect for the law or believe that the law applies to him. Moreover, as the trial court noted, the nature of Keck's prior convictions, including multiple convictions for battery and theft, demonstrate that he does not have any empathy for the suffering of others.

[18]    In light of this evidence of the nature of Keck's offense and his character, we do not find his sentence inappropriate.

[19]    Affirmed.

Riley, J., and Robb, J., concur.